DATED: JULY 26, 2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JANICE LINNELL SATTERFIELD ) | Case No. 09-1102 |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| MARTIN P. SHEEHAN, trustee, and ) | |
| JANICE LINNELL SATTERFIELD, by ) | |
| Debbie Alfred, Power of Attorney, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. Proc. No. 10-57 |
| v. ) | |
| ) | |
| KEY FINANCIAL CORPORATION, ) | |
| SAXON MORTGAGE, CHRISTOPHER ) | |
| M. SMITH, AARON HOFFMAN, and ) | |
| DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

When Janice Linnell Satterfield (the "Debtor") filed her May 18, 2009 Chapter 7 bankruptcy petition, she failed to list any legal claim that she had against Key Financial Corporation. Based on that omission, Key Financial seeks to dismiss the Debtor's lawsuit based on the Debtor's lack of standing to pursue the claim, and on grounds of judicial estoppel.

For the reasons stated herein, the court will deny the motion to dismiss without prejudice.

### I. BACKGROUND

1

On April 30, 2009 – before the Debtor filed her May 18, 2009 Chapter 7 bankruptcy petition – the Debtor, through her power of attorney, Debbie Alfred, filed a predatory lending complaint against Key Financial, Saxon Mortgage, Inc., Christopher M. Smith, Aaron Hoffman, and Deutche Bank National Trust Co., in the Circuit Court of Taylor County West Virginia, *Satterfield v. Key Financial Corp.*, No. 09-C-25.

In the state court complaint, the Debtor asserts that she contracted with Creative Home Improvements, Inc., to install three doors and two storm doors at her residence for $8,374. To pay the cost of the purchases and installations, she borrowed $76,941 from Key Financial, the proceeds of which were used to payoff an existing deed of trust (about $62,500), and Creative Home Improvements. Key Financial determined to loan the Debtor $76,941, based on an appraisal of her residence performed by Christopher M. Smith. The Debtor contends that the actual value of her residence was only $56,000. Aaron Hoffman conducted the closing of the loan. After the loan was made, Saxon Mortgage, Inc., became the loan servicer, and, allegedly, Deutsche Bank National Trust Company, as trustee for Saxon Asset Securities Trust 2007-3, is the current holder of the loan. In her state court complaint, the Debtor alleges eight causes of action, including: unconscionable inducement; unconscionable contract; fraudulent misrepresentation; fraud and conspiracy; and joint venture, conspiracy, and agency.

In the Debtor's bankruptcy case, she stated on her schedule of personal property that she had potential contingent and unliquidated claims against Green Tree[1] and Saxon Mortgage, each of which had an "unknown" value. The Debtor did not claim any portion of these potential claims as exempt property. The Debtor declared, under penalty of perjury, that she read her bankruptcy schedules and that they were true and correct to the best of her knowledge, information, and belief. While Saxon Mortgage and Green Tree were listed on the Debtor's mailing matrix and received notice of the Debtor's bankruptcy filing, Key Financial was not listed by the Debtor and, therefore,

---

[1] Green Tree is identified on Schedule D, the Debtor's schedule of secured claims, as having a second deed of trust on her residence. Green Tree was not a named defendant in the Debtor's pending state court action.

2

was not notified of the Debtor's bankruptcy filing by the bankruptcy noticing center.[2]

Also, Question 4 on the Debtor's statement of financial affairs requires the Debtor to list all suits and administrative proceedings to which the Debtor is or was a party within one year immediately preceding the filing of her bankruptcy case. In response to Question 4, the Debtor indicated that no such suits or administrative proceedings existed. The Debtor declared, under penalty of perjury, that she had read the answer to Question 4 on her statement of financial affairs and that her answer to that question was true and correct.

Meanwhile, both the Debtor's bankruptcy case and state court lawsuit against Key Financial progressed. After conducting a meeting of creditors and examining the Debtor, her Chapter 7 trustee declared that no non-exempt or unencumbered assets existed to administer for creditors of her bankruptcy estate. On June 8, 2009, in the course of the bankruptcy case, Deutsche Bank National Trust Company, as trustee for Saxon Asset Securities Trust 2007-3, filed a motion for relief from the automatic stay to exercise state law rights against the Debtor's residential real property on the basis that she had not paid her mortgage note for about six months. At a hearing on July 20, 2009, the Debtor's attorney represented that the Debtor had a claim against Saxon Mortgage and had consulted with an attorney about filing a lawsuit. Debtor's counsel stated that he needed to get the employment terms from the attorney handling the claim against Saxon Mortgage so that he could arrange for an application to employ that attorney on behalf of the bankruptcy estate. No further action was taken on the stay relief motion, and, after notice and an opportunity for a hearing, the court dismissed Deutsche Bank's stay relief motion on October 26, 2009, based on its failure to prosecute the motion. The bankruptcy case closed on November 6, 2009.

In the state court action, Key Financial answered the Debtor's original complaint on June 30, 2009, and combined it with a motion to dismiss the case on the assertion that her claims against it were barred by the applicable statute of limitations. On December 2, 2009, Key Financial's motion was denied as premature, and the Debtor was afforded the opportunity to file an amended complaint naming Deutsche Bank as the current holder of the mortgage loan.

Key Financial asserts that it learned, for the first time, that the Debtor had filed for

---

[2] Key Financial was added to the mailing matrix on April 12, 2010, after it filed a motion to reopen this case.

3

bankruptcy during discovery in the state court litigation. On April 12, 2010, Key Financial reopened the Debtor's bankruptcy case and removed the Debtor's state court litigation against it, and the other defendants, to this court. On May 6, 2010, the Debtor filed an amended Schedule B, listing contingent and unliquidated claims against Aaron Hofman, Christopher M. Smith, Deutsche Bank National Trust Co., and Key Financial Corporation as having an unknown value. The Debtor also filed an amended claim of exemption on Schedule C, claiming $25,000 of the value of the contingent claims as exempt property.[3] The court gave the Debtor's Chapter 7 trustee 30 days to investigate the disclosure of the claim against Key Financial, and the Debtor's Chapter 7 trustee has now determined that the lawsuit is an asset of the Debtor's bankruptcy estate subject to liquidation and has instructed creditors to file proofs of claim.

## II. DISCUSSION

Key Financial contends that the Debtor lacks prudential standing to bring her alleged causes of action against it on the basis that her claims arose pre-petition, became property of her Chapter 7 bankruptcy estate, and have not been abandoned by the Debtor's Chapter 7 trustee. In addition, Key Financial seeks to judicially estop the Debtor from asserting pre-petition causes actions when she has already sworn, under penalty of perjury, that she had no causes of action at the time she filed her schedules and statement of financial affairs.

**A.   Standing**

In Key Financial's view, only the Debtor's Chapter 7 trustee has standing to assert the causes of action alleged against it in the Debtor's state court complaint.

Key Financial's motion to dismiss on grounds of standing was filed before the Debtor's Chapter 7 trustee determined, in the reopened case, that assets existed to administer for all creditors of the Debtor's bankruptcy estate. Because the trustee has indicated that he will administer the Debtor's lawsuit, the court will direct that the trustee be added as a party plaintiff to this case under Fed. R. Bankr. P. 17(a). See Fed. R. Civ. P. 17(a)(3) ("After ratification, joinder, or substitution [of the real party in interest] the action proceeds as if it had been originally commenced by the real party in interest."); *Wesley v. Nat'l Mentor Healthcare, LLC*, No. 1:09-cv-0978, 2010 U.S. Dist. LEXIS

---

[3] No objection was filed to the Debtor's amended claim of exemption.

10925 at *10 (N.D. Ga. June 10, 2010) (denying a motion to dismiss based on the debtor's lack of standing to pursue the claim when the court granted the bankruptcy trustee's motion to intervene as party plaintiff).

Consequently, the court will deny Key Financial's motion to dismiss based on the Debtor's lack of standing.

**B.   Judicial Estoppel**

Key Financial asserts that the Debtor has attempted to play fast and loose with the court by stating her bankruptcy petition and schedules that she has no claim against Key Financial, when, in fact, the lawsuit against it was pending at the time she filed bankruptcy. In its view, by swearing under penalty of perjury that she had no claims, and then asserting the claims in this adversary proceeding, the Debtor has taken inconsistent factual and legal positions before a judicial tribunal.

In *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), the Court explained that judicial estoppel applies "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position," and then, subsequently, "simply because his interests have changed, assume[s] a contrary position. . . . ." Thus, judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* The purpose of judicial estoppel is "to protect the integrity of the judicial process," by preventing "parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50. Judicial estoppel is an equitable doctrine invoked by a court in its discretion. *Id.* at 750. Although not reducible to a general formulation of principle, a court should consider the specific facts of the case, and generally consider the following three factors:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750-51 (citations omitted); *see also Folio v. City of Clarksburg*, 134 F.3d 1211, 1218 (4th Cir.

1998) (adding that "the party to be estopped must have acted intentionally, not inadvertently.").

In this case, however, no need exists to apply the judicial estoppel tests because the Debtor's Chapter 7 trustee will be substituted as a party plaintiff, and the fact that the Debtor may have taken an inconsistent position in her schedules and statements accompanying her bankruptcy petition does not implicate the rights of the trustee to pursue the claims on behalf of the bankruptcy estate. The Debtor's omitted claims became an asset of the bankruptcy estate when the debtor filed her petition. 11 U.S.C. § 541(a). The trustee then became the real party in interest. Since that time, the trustee never took an inconsistent position under oath with regard to the claim. Thus, the trustee cannot now be judicially estopped from pursuing it. *E.g.*, *Moses v. Howard Univ. Hosp.*, No; 08-7087, 2010 U.S. App. LEXIS 11032 at *10 (D.C. Cir. June 1, 2010) (noting that the district court properly amended its judgment to "clarify that its judicial estoppel holding only applied to the extent that the retaliation claim was 'prosecuted by [the debtor] on his own behalf' and did not apply to the debtor's Chapter 7 trustee); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir. 2004) ("The district court's judgment is reversed because the doctrine of judicial estoppel was improperly invoked. The claim against Wendy's belongs to the bankruptcy estate and its representative, the trustee. The trustee made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct."); *Alan Meda Plan v. Snell & Wilmer, L.L.P.*, 2009 U.S. Dist. LEXIS 89334 at *21 (D. Ariz. Sept. 28, 2009) ("[The trustee] never took an inconsistent position in court, never knowingly attempted to persuade the court to adopt the prior [inconsistent statement] and did not personally gain any benefit from [the debtor's] prior nondisclosure. . . . [O]nce [the debtor] filed his bankruptcy petition, the potential . . . claims became part of the Estate. [O]nly [the trustee] . . . . has standing to bring these claims . . . and [the debtor's] actions cannot abandon the claim for [the trustee]. . . . Estopping [the trustee], who never personally made any inconsistent statements, would not protect judicial integrity, particularly given that any award [the trustee] secures belongs to the Estate, and not to [the debtor]."); *Riazuddin v. Schindler Elevator Corp. (In re Riazuddin)*, 363 B.R. 177, 188 (B.A.P. 10th Cir. 2007) ("The post-petition conduct of the Debtors, in omitting the claim from their schedules and failing to disclose it at the Section 341 meeting, does not relate to the merits of the personal injury claim and should not limit the Trustee's rights to pursue the claim that vested in the estate immediately upon the filing of the petition."); *cf. Wiggins v. Citizens Gas & Coke Util.*,

No. 1:03-cv-1882, 2008 U.S. Dist. LEXIS 79415 (S.D. Ind. Oct. 7, 2008) (limiting the application of judicial estoppel with regards to the debtor's Chapter 7 trustee so that the trustee could only recover on the undisclosed lawsuit to the extent that creditors file proofs of claim in the bankruptcy estate).[4]

### III. CONCLUSION

For the above stated reasons, the court will deny Key Financial's motion to dismiss, without prejudice to refiling. The court will enter a separate order pursuant to Fed. R. Bankr. P. 7058.

---

[4] In *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197 (5th Cir. 1999), the court applied the doctrine of judicial estoppel against the Chapter 7 trustee, but did not include any analysis in its opinion as to why the doctrine should be unchanged when the trustee – not the debtor – was the party plaintiff. Under the specific facts of that case, however, the bankruptcy court determined that the trustee knew of the cause of action before the case was closed, *id.* at 204, 207, and the debtor and the trustee reached an agreement that the trustee would only take 15% of any recovery from the lawsuit. *Id.* at 204. Also, the trustee did not intervene in the lawsuit until the eve of trial. *Id.* at 204.

Key Financial contends that the district court's recent decision in *Arbogast v. Wells Fargo Auto Fin., Inc.*, No. 2:09-cv-49, 2009 U.S. Dist. LEXIS 97815 (N.D.W. Va. Oct. 21, 2009), should be followed in this case. While *Arbogast* applied the doctrine of judicial estoppel against the debtor, no bankruptcy trustee was involved in the case. Consequently, *Arbogast* was decided on a different set of facts and is not applicable here.